**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| Retrophin, Inc., ) | |
| ) | |
| Plaintiff, ) | Case No. |
| ) | |
| v. ) | CIV NO.: 8:14-CV-00026 - JLS (JPR) |
| ) | pending in the United States District |
| ) | Court for the Central District of |
| Questcor Pharmaceuticals, Inc., ) | California |
| ) | |
| Defendant. ) | |
| ) | |

**NON-PARTY MARATHON PHARMACEUTICALS, LLC'S**
**MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO MODIFY**
**DEFENDANT'S SUBPOENA TO PRODUCE DOCUMENTS**

Pursuant to Federal Rules of Civil Procedure 26 and 45, non-party Marathon Pharmaceuticals, LLC ("Marathon") respectfully submits this Memorandum of Law in Support of its Motion (the "Motion") to Modify Defendant's Subpoena to Produce Documents (the "Subpoena," attached to the Motion as Exhibit 1), issued by Defendant Questcor Pharmaceuticals, Inc. ("Questcor") in the above-referenced case, which is pending in the United States District Court for the Central District of California.

## INTRODUCTION

Movant and non-party Marathon is a privately held biopharmaceutical company based in Northbrook, Illinois. Marathon is dedicated to improving the lives of patients with few or no treatment options by delivering new medicines for rare diseases and keeping small volume, medically necessary medications available for people who need them. By its Motion, Marathon seeks to modify a subpoena from direct-competitor Questcor in a litigation that also involves Retrophin, Inc. ("Retrophin"), a second direct-competitor of Marathon.

Questcor's Subpoena seeks broad disclosure from non-party Marathon, including of some of Marathon's most sensitive and confidential business information—such as documents that demonstrate Marathon's internal thought processes regarding future drug development and business plans and strategies. Such disclosure is unreasonable, unnecessary, and, if permitted by this Court, would be highly prejudicial to Marathon. This is especially unwarranted where, as here, Marathon is a non-party to the litigation between Questcor and Retrophin and is not alleged to have committed any wrongdoing whatsoever.

In negotiations dating back to December 2014, counsel for Marathon and Questcor have engaged in good faith negotiations concerning the Subpoena, resulting in Marathon's production of over 600 pages of documents responsive to all of Questcor's key requests. Still, Questcor refuses to withdraw its requests for non-party Marathon's most sensitive and confidential business information and, as a result, the parties have reached an unworkable impasse. By its Motion, Marathon asks this Court for the limited relief of modifying the Subpoena to shield Marathon's most sensitive and confidential documents from disclosure in litigation to which Marathon is not a party and that involves two of its direct competitors.

## **BACKGROUND**

Marathon is a privately held biopharmaceutical company dedicated to improving the lives of patients with few or no treatment options by delivering new medicines for rare diseases and keeping small volume, medically necessary medications available for people who need them. In addition to taking potential treatments through the development and regulatory processes, Marathon actively works to acquire promising experimental treatments.

This Motion arises because of an antitrust dispute between two of Marathon's direct competitors—Questcor and Retrophin. Questcor is a California corporation with its principal place of business in Anaheim, California. Retrophin is a Delaware corporation with its principal

place of business in New York, New York. Both Questcor and Retrophin, like Marathon, are

biopharmaceutical companies that (1) develop treatments for rare diseases and (2) acquire small-

volume drugs from other pharmaceutical companies. Marathon has no connection to the litigation

between Questcor and Retrophin other than, at one point, Marathon considered acquiring the

rights to the drug at the heart of the dispute between Questcor and Retrophin.

## I.      The Underlying Lawsuit

On January 7, 2014, Retrophin filed a complaint against Questcor in the Central District of

California, alleging that Questcor violated state and federal antitrust laws by monopolizing the

market for therapeutic preparations of adrenocorticotropic hormone (ACTH), or corticotropin—a

drug used to treat certain life threatening and often fatal diseases, including multiple sclerosis,

joint disorders (e.g., rheumatoid arthritis), and autoimmune disorders (e.g., lupus). ACTH is

available only with a doctor's prescription and is administered as a shot under the skin or into one

of the muscles.

### A.      Acthar and the Relevant Markets

At present, Questcor is the sole U.S. provider of Food and Drug Administration ("FDA")-

approved therapeutic preparations of ACTH, selling its drug under the brand name H.P. Acthar

Gel ("Acthar"). Questcor has obtained "Orphan Drug Designation" for Acthar from the FDA,

giving Questcor the exclusive right to market Acthar and its chemical equivalent for use in treating

infantile spasms.[1] Acthar is also the most commonly used treatment of last resort for patients with

---

[1]     According to the National Institute for Neurological Disorders and Stroke, infantile spasms refer to "a specific
type of seizure seen in an epilepsy syndrome of infancy and childhood known as West Syndrome. West
Syndrome is characterized by infantile spasms, developmental regression, and a specific pattern on
electroencephalography (EEG) testing called hypsarrhythmia (chaotic brain waves). The onset of infantile
spasms is usually in the first year of life, typically between 4-8 months. The seizures primarily consist of a
sudden bending forward of the body with stiffening of the arms and legs; some children arch their backs as they
extend their arms and legs. Spasms tend to occur upon awakening or after feeding, and often occur in clusters of
up to 100 spasms at a time. Infants may have dozens of clusters and several hundred spasms per day. Infantile
spasms usually stop by age five, but may be replaced by other seizure types. Many underlying disorders, such as
birth injury, metabolic disorders, and genetic disorders can give rise to spasms, making it important to identify the

nephrotic syndrome,[2] which means that it is used when patients do not respond to or cannot tolerate other therapies.  In the underlying litigation between Retrophin and Questcor, Retrophin alleges that Questcor has monopoly power in three relevant markets in the United States (the "Relevant Markets"):  (1) ACTH therapeutic drugs, (2) therapeutic drugs to treat infantile spasms, and (3) last resort therapeutic drugs to treat nephrotic syndrome.

### B.    Questcor's Acquisition of the Rights to Synacthen

Novartis AG ("Novartis") is a multinational pharmaceutical company based in Switzerland.  Until June 2013, Novartis held the rights to Synacthen, a synthetic ACTH drug that is similar but not chemically identical to Acthar.  Synacthen has been used for decades outside of the United States for the treatment of infantile spasms and nephrotic syndrome; it is not sold in the United States because it has never been submitted to the FDA for approval.  Questcor acquired the rights to Synacthen from Novartis in June 2013 (the "Synacthen Transaction").

Retrophin's suit against Questcor relates to the Synacthen Transaction.  The suit alleges that after approximately nine months of negotiations, Retrophin was on the cusp of acquiring Novartis' rights in Synacthen when Questcor swooped in with a last-minute bid to preserve its Acthar monopoly.  Retrophin alleges that it planned to purchase the right to manufacture and sell Synacthen in the United States from Novartis and then to seek FDA approval for its use as a therapeutic.  If Retrophin had completed this acquisition, the suit alleges, Retrophin would have been able to compete with Questcor's Acthar product, selling Synacthen at a fraction of the price Questcor charges for Acthar.  Retrophin alleges that Questcor's acquisition of Synacthen has

---

underlying     cause.     In     some     children,     no     cause     can     be     found."
http://www.ninds.nih.gov/disorders/infantilespasms/infantilespasms.htm.

[2]    Nephrotic syndrome is "a group of symptoms that include protein in the urine, low blood protein levels, high cholesterol levels, high triglyceride levels, and swelling. […] Nephrotic syndrome is caused by different disorders that damage the kidneys.  This damage leads to the release of too much protein in the urine." http://www.nlm.nih.gov/medlineplus/ency/article/000490.htm.   While nephrotic syndrome can affect all age groups, in children it is most common between ages 2 and 6.  *Id.*

preserved and entrenched Questcor's monopoly in the Relevant Markets by foreclosing or delaying Retrophin's entry into those markets. Retrophin also claims that it is in the process of developing a new drug to match Synacthen and compete in the Relevant Markets.

### C.     The Court's Denial of Questcor's Motion to Dismiss

Questcor moved to dismiss Retrophin's complaint under Fed. R. Civ. P. 12(b)(c) based on the following arguments: (1) Retrophin lacks antitrust injury and antitrust standing; (2) Retrophin fails to allege market power or harm to competition; (3) Retrophin's attempted monopolization claim fails; (4) Retrophin fails to allege the absence of a legitimate business justification by Questcor; and (5) Retrophin's state law claims fail. On August 8, 2014, the court denied Questcor's motion to dismiss on each of these grounds.

## II.     The Subpoena

Before Questcor acquired the rights to Synacthen from Novartis, Marathon had considered acquiring those rights. At various times in 2012 and early 2013, Marathon (initially through Medicas Group LLC and Norphan Pharmaceuticals Inc., the latter of which was acquired by Marathon in 2013) and Novartis engaged in discussions concerning a potential transaction involving brand-name Synacthen for the treatment of infantile spasms. During the course of those discussions, Marathon devoted significant resources to conducting internal evaluations of the potential market for Synacthen and other ACTH products, including potential strategies for bringing Synacthen and other ACTH products to market for the treatment of infantile spasms and various other indications. Although some of those analyses pertained solely to Marathon's assessment of brand-name Synacthen for the treatment of infantile spasms, many others reveal Marathon's assessment of other ACTH products—including products that Marathon could pursue with or without consummating a transaction with Novartis.

Following the public announcement of Questcor's acquisition of the rights to brand-name Synacthen, Marathon ceased its evaluation of the potential market for brand-name Synacthen. Because Marathon had invested significant resources in evaluating the potential market for other ACTH products for various indications, Marathon did not cease those activities after its failed bid for Synacthen.

Questcor's Subpoena to Marathon calls for Marathon to produce five broad categories (with additional subcategories as set out in full in the Subpoena) of documents (each an "Original Request"), including:

1.    Marathon's organizational charts for each of the years 2012, 2013, and 2014;

2.    All documents relating to communications with the Federal Trade Commission ("FTC") relating to Synacthen, Acthar, or Questcor;

3.    All documents relating to communications between Marathon and Novartis relating to Synacthen, Acthar, or Questcor;

4.    All documents relating to Marathon's consideration, evaluation, purchase, licensure, or acquisition of Synacthen, potential or otherwise; and

5.    All documents relating to Synacthen.

Sub-categories of Original Request 5, in particular, seek Marathon's internal evaluations of the potential market for not only brand-name Synacthen, but also other ACTH products (both natural and synthetic), including potential strategies for bringing such products to market. These include documents relating to:

5.    (a) FDA review and approval of Synacthen as a potential treatment for Infantile Spasms, Nephrotic Syndrome, Membranous Nephropathy, or any other indication;

…

(f) discussion, consideration, or analysis of developing ACTH products other than Synacthen Depot, whether ACTH 1-24 or otherwise, as a potential treatment for Infantile Spasms, Nephrotic Syndrome, Membranous Nephropathy, or any other indication;

…

(i) the manufacture, supply, and testing of the Active Pharmaceutical Ingredient in Synacthen….

## III.    The Meet and Confers

Marathon received Questcor's Subpoena on November 21, 2014.  Since that time, the parties have conferred numerous times by telephonic conference and written correspondence to narrow the categories of documents requested.  As a result of those discussions, Questcor identified the following key categories of documents (each a "Revised Request"):

1. Key documents from the Marathon and Novartis negotiations, including but not limited to, letters of intent and other formal bidding documents;

2. Any materials provided by Marathon to the FTC relating to the Synacthen Transaction; and

3. Documents sufficient to show how Marathon projected the pathway and timing regarding FDA approval and market entry for any indications in evaluating Synacthen.

Marathon produced documents in response to:  Request No. 1 on January 5, 16, and 29 2015; Request No. 2 on January 5, 16, 22, and 29, on February 3 and 13, and on March 10, 2015; and Request No. 3 on January 22 and 29 and on February 13, 2015.  These documents are also responsive to Original Requests Nos. 2-5.  Both the Original and Revised Requests, however, are overbroad and improper to the extent that they seek documents that reflect Marathon's highly confidential forward-looking business strategies.  To date, Questcor has refused to narrow its requests to exclude such information, to which Marathon has objected.  (*See* Marathon's Objections and Responses to the Subpoena, attached to the Motion as Exhibit 2.)

## IV.    The Joint Stipulation Governing Confidential Material in the Underlying Case

Questcor provided Marathon with a copy of the Joint Stipulation Governing Confidential Material entered in the underlying case (the "Protective Order"), which contains several confidentiality designations, including "Highly Confidential Subject to Restricted Access

Protections"—but for the exceptions discussed immediately below, essentially an outside-counsel eyes only designation. (*See* Protective Order, attached to the Motion as Exhibit 3, ¶ 6.)

There remain, however, critical deficiencies with the Protective Order, which permits the parties to disseminate even material designated "Highly Confidential Subject to Restricted Access Protections" (*i.e.*, the most sensitive and proprietary information) to a broad group beyond outside counsel in the underlying litigation, including to "witnesses in the action to whom disclosure of [such materials] is reasonably necessary during their depositions" as well as consulting or testifying experts in the underlying litigation. *See id.* at 8-9. The Protective Order also fails specifically to address the use of confidential information at any trial in the underlying litigation, which is the forum in which Questcor is most likely going to want to use any such confidential information. (*See* Ex. 3, ¶¶ 1, 17.)

## LEGAL STANDARD

Despite the broad right of parties to obtain discovery "regarding any nonprivileged matter that is relevant to any party's claim or defense," Fed. R. Civ. P. 26(b)(1), courts must limit discovery where, *inter alia*, "the burden or expense of the proposed discovery outweighs its likely benefit, considering the needs of the case [and] the importance of the discovery in resolving the issues." Fed R. Civ. P. 26(b)(2)(C)(iii). Rule 45 also protects non-parties by giving courts discretion to quash or modify subpoenas that seek disclosure of "a trade secret or other confidential research, development, or commercial information." Fed. R. Civ. P. 45(d)(3)(B)(i).

Where such information is at issue, courts apply a balancing test to determine whether the requesting party's need for the information sought in the subpoena outweighs the adverse effect of disclosure of confidential information, looking to factors including: (1) the entity's status as a non-party; (2) the relevance of the discovery sought; (3) the subpoenaing party's need for the documents; (4) the breadth of the request; and (5) the burden imposed on the subpoenaed party.

8

*See Parker v. Four Seasons Hotels, Ltd.*, 291 F.R.D. 181, 188 (N.D. Ill. 2013); *see also Deitchman v. E.R. Squibb & Sons, Inc.*, 740 F.2d 556, 560 (7th Cir. 1984) ("When a court is confronted with a motion to quash [a broad] subpoena, its duty is […] to reduce the demand to what is reasonable, considering the discoverer's needs and the discoveree's problems"). The burden is on the party seeking discovery to establish that the information "is sufficiently relevant and necessary to his case to outweigh the harm disclosure would cause to the person from whom he is seeking the information." *See Suture Express, Inc. v. Cardinal Health 200, LLC*, No. 14-CV-04737, 2014 WL 6478077, at *4 (N.D. Ill. Nov. 18, 2014) (internal quotations and citations omitted); *Deitchman*, 740 F.2d at 565 ("The discovery should be no more intrusive than is necessary to avoid a miscarriage of justice."). Because nonparties do not have the same expectations as parties to bear the costs of litigation, "courts give special weight to the unwanted burdens thrust upon non-parties when balancing competing needs." *Id.*

## **ARGUMENT**

**I.** **THIS COURT SHOULD EXERCISE ITS DISCRETION AND LIMIT THE SUBPOENA TO PROTECT NON-PARTY MARATHON'S MOST CONFIDENTIAL, COMMERCIALLY SENSITIVE INFORMATION.**

This Court should grant Marathon's Motion because (1) the Subpoena seeks confidential, commercially-sensitive information that non-party Marathon should not be required to produce; (2) disclosure to Marathon's direct competitors would irreparably harm Marathon; and (3) the harm disclosure would cause to Marathon far outweighs any relevance or necessity of that information to Questcor's claims and defenses in the underlying litigation against Retrophin.

*First*, the Subpoena seeks confidential, commercially-sensitive information that non-party Marathon does not disclose to anyone—let alone to competitors. As noted above, the Subpoena seeks not only Marathon's internal evaluations of brand-name Synacthen for the treatment of infantile spasms, but also of other ACTH products (both natural and synthetic), including potential

strategies for bringing such products to market for the treatment of infantile spasms and other indications. This latter category of documents constitutes non-party Marathon's most confidential and commercially-sensitive information and gives insight into Marathon's forward-looking business plans and strategies.

Marathon takes significant steps to safeguard this information. Marathon requires all employees to sign confidentiality agreements that prohibit them from disclosing confidential and proprietary information (including trade secrets) to anyone outside of Marathon. These agreements govern any information pertaining to, for example, forward-looking business plans and strategies and drug development activities—precisely the documents sought by the Subpoena. Marathon typically restricts access to this information to a small number of high-level Marathon employees on a need-to-know basis. (Declaration of Patrick J. Morris ("Morris Declaration"), attached to the Motion as Exhibit 4, at ¶ 7.)

Requiring Marathon to disclose this information as a non-party presents an additional layer of unfairness. Marathon need not be subject to the same type of discovery requests served by the parties in the underlying lawsuit. *Patterson v. Burge*, No. 03 C 4433, 2005 WL 43240, at *1 (N.D. Ill. Jan. 6, 2005) ("[N]on-parties are not treated exactly like parties in the discovery context, and the possibility of mere relevance may not be enough; rather, non-parties are entitled to somewhat greater protection.").

For these reasons, courts regularly protect non-parties from disclosure of confidential, commercially-sensitive information—such as the type sought by the Subpoena. *See, e.g.*, *Suture Express*, 2014 WL 6478077, at *8 (granting a motion to quash and denying a motion to compel with respect to requests that sought to "intrude into the province of the internal decision-making process by which [the target of the subpoena] formulates its sales policies and pricing structure"); *Spartanburg Reg'l Healthcare Sys. v. Hillenbrand Indus., Inc.,* No. 1:05–MC–107, 2005 WL

2045818, at *4 (W.D.Mich. Aug. 24, 2005) (granting motion to quash where defendant in antitrust action asked for production of documents by non-party competitor that would reveal non-party's "thought processes" regarding developing, pricing, and marketing its products, and cited favorably by this Court in *Suture Express*, 2014 WL 6478077, at *8); *Nat'l Claims Mgmt. Corp. v. Mercedes-Benz of N. Am., Inc.*, No. 97 C 6293, 1998 WL 27136, at *1 (N.D. Ill. Jan. 15, 1998) (rejecting motion to compel production of documents related to trade secrets and other confidential information); *United States v. Serta Associates, Inc.*, 29 F.R.D. 136, 138 (N.D. Ill. 1961) (rejecting motion to compel production of sales information to a competitor in an antitrust suit).

*Second,* disclosure of documents that reveal Marathon's forward-looking business plans and strategies to its direct competitors would cause irreparable harm to Marathon. Such documents would provide Questcor and Retrophin with an unfair competitive advantage by revealing Marathon's internal thought processes regarding future drug development and other business plans and strategies. This could cause Questcor and Retrophin to adjust their own product development plans to better position them with respect to Marathon, significantly disadvantaging Marathon, especially given the highly specialized and narrow industry in which the three operate—and in which Questcor already possesses significantly greater resources than Marathon. (Morris Decl. at ¶ 8-9.) This Court should be especially vigilant in safeguarding such information from discovery—especially from a non-party. *See, e.g.*, *Suture Express*, 2014 WL 6478077, at *6 (refusing to compel a third-party to produce "business plans and strategies" because compelling such disclosure would force the third party to provide "its most confidential and commercially sensitive information to its direct competitors," which "alone counsels against allowing discovery of these materials"); *see also Ultimate Timing, LLC v. Simms*, 3:09-mc-6, 2009 WL 1148056, at *2 (S.D. Ind. Apr. 28, 2009) ("in a circumstance involving direct competitors,

caution must be used in pre-litigation discovery devices to limit the potential that discovery directed to non-parties is used for the improper purpose of obtaining proprietary information of the competitor . . . [T]he breadth of the subpoenas does not allow [the court] to draw a bright line between that which is relevant to the underlying litigation and that which may be a fishing expedition for other proprietary information," and cited favorably by this Court in *Suture Express,* 2014 WL 6478077, at *6); *Greater Rockford Energy & Tech. Corp. v. Shell Oil Co.*, 138 F.R.D. 530, 536 (C.D. Ill. 1991) ("[c]ourts have presumed that disclosure of sensitive information to competitors is more harmful than disclosure to a noncompetitor," and cited favorably by this Court in *Suture Express,* 2014 WL 6478077, at *6).

*Third*, Questcor has not articulated how information reflecting Marathon's evaluation of, and strategy with respect to, products other than brand-name Synacthen for the treatment of infantile spasms is so relevant and necessary to its claims or defenses in the underlying lawsuit. This Court should limit the Subpoena accordingly. *Cf. Spartanburg Reg. Healthcare Sys. v. Hillenbrand Indus. Inc.*, No. 1:05-MC-107, 2005 WL 2045818, at *4 (W.D. Mich. Aug. 24, 2005) (finding no legitimate use for a request of a non-party competitor seeking confidential information by which the non-party developed, priced, and marketed its products, and cited favorably by this Court in *Suture Express,* 2014 WL 6478077, at *8). And even assuming such documents had some relevance and necessity to Questcor's claims or defenses, these considerations are far outweighed by Marathon's interest in protecting its carefully guarded forward-looking business plans and strategies, as discussed immediately above.

## II. THE PROTECTIVE ORDER IN THE UNDERLYING LITIGATION DOES NOT SUFFICIENTLY PROTECT MARATHON'S INTERESTS.

Questcor will undoubtedly argue that the Protective Order entered in the underlying litigation sufficiently protects Marathon. As discussed below, this is not accurate; and on this

point, the law is clear: "even with a protective order in place, there is always the risk of inadvertent disclosure of confidential material, despite the best intentions of the parties." *Suture Express*, 2014 WL 6478077, at \*6. For this reason, even where a protective order is in place, a party requesting disclosure must "make a strong showing of need, especially when confidential information from a nonparty is sought." *Concord Boat Corp. v. Brunswick Corp.*, No. 96 C 6026, 1996 WL 705260, at \*3 (N.D. Ill. Dec. 4, 1996); *see also Suture Express*, 2014 WL 6478077, at \*6 (quoting *Concord* and stating where the underlying litigation involved antitrust claims: "the existence of [a] protective order is not a license for the Parties to obtain all of the confidential material that they seek"). Questcor cannot make this showing.

The Protective Order does not adequately protect Marathon's interest in preserving its confidential, commercially-sensitive information. For example, for material designated "Highly Confidential Subject to Restricted Access Protections" (i.e. the most protective designation), the Protective Order permits disclosure beyond outside counsel, including to witnesses during depositions, as well as consulting or testifying experts in the underlying litigation. (*See* Ex. 3, ¶ 10(f).) Neither Marathon nor the parties to the underlying litigation control how witnesses or experts might use confidential information given to them—including how experts incorporate confidential information into their reports. *See, e.g.*, *Suture Express*, 2014 WL 6478077, at \*6 ("[O]nce an expert has digested this confidential information, it is unlikely the expert will forget.")

The Protective Order also fails to address the use of confidential information at any trial in the underlying litigation. (*See* Ex. 3, ¶¶ 1 ("Any use of Protected Material at trial in this Action shall be governed by a separate agreement or order."), 17.) It is *precisely* this concern that motivated the *Suture Express* Court to grant the non-party's motion to quash in that case. *Suture Express*, 2014 WL 6478077, at \*6 ("Furthermore, the Protective Order does not address the use of confidential material 'at any trial or hearing.'"). And should this case proceed to summary

13

judgment or trial, there is also a presumption in favor of access to judicial records that courts in the Ninth Circuit enforce—even over agreement between parties to restrict public access. *Foltz v. State Farm Mut. Auto. Ins. Co.*, 331 F.3d 1122, 1136 (9th Cir. 2003) (unsealing documents previously sealed by lower court upon request of parties).

Given the "potentially ruinous consequences of disclosure" here, this Court should grant Marathon's Motion. *Id. See also Greater Rockford Energy & Tech. Corp. v. Shell Oil Co.*, 138 F.R.D. 530, 538 (C.D. Ill. 1991) ("There is a constant danger inherent in disclosure of confidential information pursuant to a protective order," and cited favorably by this Court in *Suture Express,* 2014 WL 6478077, at *6 (N.D. Ill. Nov. 18, 2014)).

## III. QUESTCOR SHOULD BEAR MARATHON'S COSTS OF COMPLIANCE WITH THE SUBPOENA.

"Where third-parties are the subject of discovery requests, the courts will sometimes shift or partially shift the costs of discovery," to avoid undue burden or expense on the third party. *In re Subpoena to Creeden & Associates, Inc.*, No. 12 C 5573, 2012 WL 4580841, at *1 (N.D. Ill. Sept. 28, 2012) (ordering requesting party to bear part of third-party's staff research and production costs and legal fees); *see also* Rule 45(d)(i) (requiring the court to impose an appropriate sanction on a subpoenaing party who fails to comply with its obligation to avoid imposing undue burden or expense on a person subject to the subpoena); *The Sedona Conference Commentary on Non-Party Production & Rule 45 Subpoenas*, 9 Sedona Conf. J. 197, 198-99 (2008) ("Courts recognize that the costs and burdens of preservation and production that the law imposes on litigants should not be the same for non-parties. Third parties should not be required to subsidize litigation in which they have no stake in the outcome."). Marathon has already incurred tens of thousands of dollars in costs in its efforts to comply with the Subpoena—including costs associated with Marathon's counsel's efforts to meet and confer with Questor's counsel to narrow

14

the categories of documents requested, costs of gathering, processing, reviewing, and producing documents, and costs tied to this Motion.  Because the Subpoena has subjected Marathon to considerable burden and expense, Questcor should bear Marathon's costs of complying with the Subpoena.

## **CONCLUSION**

For the foregoing reasons, Marathon respectfully requests that the Court grant its motion to modify the Subpoena, award costs relating to its response to the Subpoena, and award any other relief that the Court finds appropriate.

Dated:  March 17, 2015

Respectfully submitted,

s/ Daniel R. Lombard
Daniel R. Lombard (Attorney No. 6290071)
KIRKLAND & ELLIS LLP
300 North LaSalle
Chicago, Illinois  60654
Telephone: (312) 862-2000
Facsimile: (312) 862-2200
dlombard@kirkland.com

Jay P. Lefkowitz, P.C. (*pro hac vice* application forthcoming)
Adam T. Humann (*pro hac vice* application forthcoming)
KIRKLAND & ELLIS LLP
601 Lexington Avenue
New York, New York 10022
Telephone: (212) 446-4800
Facsimile: (212) 446-4900
lefkowitz@kirkland.com
adam.humann@kirkland.com

*Attorneys for Non-Party Marathon Pharmaceuticals, LLC*

## CERTIFICATE OF SERVICE

The undersigned, Daniel R. Lombard, an attorney, hereby certifies that on March 17, 2015, he caused a copy of the attached **Non-Party Marathon Pharmaceuticals, LLC's Memorandum of Law in Support of its Motion to Modify Defendant's Subpoena to Produce Documents** to be served on the following entity by email and U.S. mail.

Rocky C. Tsai
Ropes & Gray LLP
Three Embarcadero Ctr.
San Francisco, California 94111
rocky.tsai@ropesgray.com

s/ Daniel R. Lombard